KRUEGER and another, Appellants, vs. TOPP-STEWART TRACTOR COMPANY and another, Respondents.

*September 20—November 15, 1921.*

*Electricity: Transmission lines: Acquisition of right of way: Compensation to landowner: Damages.*

1. A corporation engaged in the business of furnishing power was granted the right, by a good and sufficient conveyance, to construct its transmission line across plaintiffs' farm. It took possession of the right of way, built its line, ever since occupied the same by itself and its grantee, and it has not in any manner repudiated the grant. The plaintiffs received nothing for the grant, and the minds of the parties never met on the consideration therefor. *Held,* under such circumstances the law implies a promise on the part of the corporation to pay what the right granted is reasonably worth.
2. In such case the court will take judicial notice that rights of this kind are not generally the subject of barter and sale so that they have a market value, it being necessary, therefore, to determine the value by evidence other than that of market value, and such evidence should include the same elements of damage as are involved in fixing compensation under condemnation proceedings.

APPEAL from a judgment of the circuit court for Shawano county: EDGAR V. WERNER, Circuit Judge. *Reversed.*

In the fall of 1917 the *Topp-Stewart Tractor Company*

(hereinafter referred to as the *Tractor Company*), owning a power plant in the town of ·Pella, Shawano county, Wisconsin, and desiring to transmit such power to the city of Clintonville, contemplated the construction of a power line for that purpose. The proposed route of the line crossed the farm of the plaintiffs located in Shawano county. Negotiations were had between the officers of the *Tractor Company* and the plaintiffs with a view of securing a right of way over said farm for the construction of the proposed line. These negotiations were conducted in behalf of the company principally by Dr. Charles Topp, president thereof, and Alexander Stewart, general superintendent. For this purpose numerous interviews occurred, resulting in considerable talk to the effect that, if the power line were built over plaintiffs' farm, both light and power would be available for the farm for substantially the same rates that would be paid by consumers in the city of Clintonville.

It appears pretty plainly that plaintiffs were desirous of securing light and power for their farm and were led to believe, as a·result of conferences with Dr. Topp and Mr. Stewart, that there would be no difficulty in securing both light and power from the proposed line, and if the line were built both light and power would be practically available for use on their farm, and that the company would supply them therewith at ordinary commercial rates (which, however, were not specifically agreed upon) without any expense on their part for special apparatus and equipment necessary to deliver such light and power.

As a result of these negotiations plaintiffs, on the 3d day of November, 1917, executed to the *Tractor Company* the grant of a right of way over said farm, in words and figures as follows:

"*Take Notice:* If this paper is signed without payment of price named, it is done at the signer's own risk and the company will not be responsible for any claim for. payment thereafter.

"Received of *Topp-Stewart Tractor Company* one dollar, in consideration of which *Emile Krueger* and *Frank Krueger,* of Shawano county, Wisconsin, hereby grant to said corporation, its successors and assigns, the right to construct, operate, and maintain lines for the transmission of electricity, including all the necessary poles and fixtures, upon and across the property described below owned by first parties, and along and across the roads or streets adjoining said property, together with the right to trim any trees along said line necessary to keep the wires free from interference by said trees, to set the necessary guys, anchors, and brace poles, and to attach to trees the necessary guy wires. The lands referred to are described as follows: Part of S. ½ of N. E. ¼, E. ½ of S. E. ¼ sec. 7, N. E. ¼ of N. E. ¼ sec. 18, T. 26, R. 14 E., county of Shawano, Wisconsin.

"Witness the hands and seals of said first parties this 3d day of November, 1917.

(Witnesses.)                          "EMIL KRUEGER.
                                      "FRANK KRUEGER."

It seems quite clear from the evidence that they were induced to execute this grant by reason of their belief that when the line was built both light and power would be practically available for use on their farm. A further inducement for the execution of the grant appears to be that the representatives of the *Tractor Company* assured them that after the line was built they would induce the town board to lay out a highway along the route of the transmission line. The *Tractor Company* built the line and subsequently sold the same to the defendant *Central Wisconsin Power Company.* Plaintiffs then demanded of the *Central Wisconsin Power Company* that it furnish them with light and power. That company advised them that it had nothing to do with the agreement upon which they predicated their right to light and power, and that the only way they could secure light and power was either to build a line from the power house to their premises and maintain it, or to purchase a 33,000-volt transformer. Mr. Joslyn, president of the *Central Wisconsin Power Company,* testified that "either of these methods

would be a possible method of furnishing the plaintiffs with light and power, but neither would be a practical method. The 33,000-volt transformer would cost about $3,000 and it would cost about $350 to $400 to build the line from the power house to the premises. The latter would be impracticable," he testified, "because should anything go wrong *Mr. Krueger* could not take care of the line himself. Some one from the plant would be needed, and as we only have one man at a time we could not give him current from the plant because we could not take care of the service. It would mean that some one would have to come from the nearest town and the service could not be replaced until some one took care of it for him."

This action was brought by plaintiffs to recover damages for breach of the agreement on the part of the *Tractor Company* to furnish plaintiffs with light and power, and upon the trial evidence was produced tending to show the value of the farm with and without light and power and with and without the presence of the poles of the transmission line across the same. At the conclusion of the plaintiffs' evidence the defendants moved for a nonsuit, which was granted, on the ground, as stated by the court in an opinion, that the negotiations between the parties relative to the furnishing of light and power did not result in a meeting of the minds of the respective parties upon any given proposition; that while, as a result of such conversations, the plaintiffs understood that they were to have light and power at ordinary commercial rates, such was not the understanding of the representatives of the *Tractor Company;* that consequently there never was a meeting of the minds, and that no binding contract was engendered between the parties. Before granting the nonsuit, however, the court granted plaintiffs leave to petition it to convert this action into one for condemnation, holding that the *Tractor Company* had entered upon the premises by consent of the plaintiffs and that they were relegated to their remedy of condemnation. The plaintiffs

refused to so petition the court, whereupon judgment was entered dismissing the complaint. From such judgment plaintiffs bring this appeal.

For the appellants there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein*.

*Llewellyn Cole* of Clintonville, attorney, and *P. H. Martin* of Green Bay, of counsel, for the respondents.

OWEN, J. In our consideration of this case we start with the proposition that the plaintiffs granted to the *Tractor Company,* by a good and sufficient conveyance for that purpose, the right to build and construct its transmission line over and across their farm. Pursuant thereto it took possession of the right of way, built its line, has ever since occupied the same by itself and its grantee, and has not in any manner repudiated the grant. It is further a conceded fact that nothing was paid to the plaintiffs for such grant unless it be the one dollar recited in the instrument of conveyance.

Plaintiffs contend that they were induced to make this grant by what they insist was an agreement on the part of the *Tractor Company* to render both light and power available to them for use upon their farm at and for the same rates charged their patrons in the city of Clintonville. It appears from the evidence that there were repeated conversations and negotiations between the plaintiffs and representatives of the *Tractor Company* looking towards the securing of this right of way, and that in such negotiations a great deal was said concerning the furnishing of light and power to the plaintiffs when the transmission line should be constructed and concerning the value and advantage that such service would be to the plaintiffs. These conversations, however, fell short of a definite contract and agreement in that respect. While we have no doubt that the contemplated availability of light and power for the use of plaintiffs on their farm together with the laying out of the highway, which the representatives of the *Tractor Company*

assured them could be procured, was the controlling induce-
ment which prompted them to execute the grant of the right
of way, nevertheless such representations were in the nature
of loose and desultory talk and did not approach the definite-
ness required to constitute a contract. It appears that there
was nothing said by any one as to how the light and power
were to be delivered at the farm. We are impressed with the
thought that the plaintiffs assumed that they could tap the
power line, and we doubt whether either Dr. Topp or Mr.
Stewart realized that an expensive transformer or an indi-
vidual line from the power plant was necessary for that
purpose. We conclude, therefore, that the minds of the
parties did not meet on the consideration for the grant. This,
we take it, was the view of the trial judge. He concluded
that there was no meeting of the minds at all, that there was
no contract between the parties, and evidently treated the
grant as a nullity.

We cannot hold the grant a nullity. The parties to this
action do not seek to have it declared a nullity. The plaint-
iffs certainly executed the grant, Exhibit A, set forth in the
statement of facts, and so long as that stands it vests in the
*Tractor Company* the right to build and maintain its trans-
mission line across plaintiffs' farm. True, the consideration,
or the supposed consideration, has failed. Assuming that
under such circumstances the plaintiffs might repudiate the
grant and that a court of equity would cancel the same, the
fact remains that the plaintiffs have not only failed to re-
pudiate the grant or to ask for a cancellation thereof, but in
this action have expressly affirmed the grant. Both parties,
therefore, stand upon the grant, and the question is, What
are the rights of the plaintiffs under these circumstances?

The plaintiffs have conveyed something of value to the
defendants. They were induced so to do in expectation of
benefits resulting to them, which have failed. It was not
their intention to donate the grant, neither was a donation
sought by the *Tractor Company*. The plaintiffs expected to

secure benefits in the nature of service which it transpires is impracticable for the *Tractor Company* or its grantee to furnish, and which they did not agree or bind themselves to furnish. The case, therefore, should be disposed of on the theory that the plaintiffs did expect to secure this service and the defendants did expect to render it, although neither party appreciated the difficulties rendering such service impracticable if not impossible. It is not reasonable to suppose that the *Tractor Company* had intended to supply the necessary transformer or to build an independent line to render this service. In fact it is not at all likely that it would be permitted by the railroad commission to carry out such an agreement even if entered into. On the other hand, it is just as unlikely that the plaintiffs would have executed this grant had they known that in order to secure this service the building of an independent line, with no assurance of necessary repairs, or the purchase of a transformer at a cost of $3,000, would be necessary. So we say that while it was undoubtedly within the contemplation of both parties that this service should be furnished to the plaintiffs, nevertheless their minds did not meet on any specific and definite proposition, in view of what was necessary to furnish the service, that is enforceable at law.

The result is that the defendants have secured something from the plaintiffs which they propose to keep and for which they have paid nothing. They secured a valuable right by virtue of a misunderstanding. The benefits which plaintiffs expected would accrue to them from the building of the line have failed. Under such circumstances the law implies a promise on the part of defendants to pay what the right is reasonably worth. This the plaintiffs should be permitted to recover in the present action. Amendment of the pleadings for that purpose should be allowed if deemed necessary. The amount which they are entitled to recover is the value of the right which they have conveyed. In ordinary cases the value of that right would be the market value. We take judicial

notice of the fact, however, that rights of this kind are not generally the subject of barter and sale so that they have a market value. It will be necessary, therefore, to determine the value by evidence other than that of market value, and such evidence should include the same elements of damage as are involved in fixing compensation under condemnation proceedings. This would seem to work out complete justice. But for the grant in this case the defendants would be driven to the institution of condemnation proceedings in order to acquire title, and the compensation to be paid would be arrived at under well established principles obtaining in such cases. In fact, defendants claim that condemnation is the exclusive remedy of the plaintiffs in this case. They therefore cannot complain if they be required to compensate the plaintiffs for the grant which they have acquired according to the rules obtaining in such cases.

There does not appear to be any privity of contract between the plaintiffs and the defendant *Central Wisconsin Power Company,* and on what theory that company could be held liable to the plaintiffs is not apparent. However, as there must be a new trial, we will not foreclose plaintiffs of an opportunity to show such liability, if any there be. That is a matter which can be disposed of by the trial court upon a new trial.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with instructions to grant a new trial in accordance with this opinion.